UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Margot Kapacs,                                    Civil No. 17-2291 (SRN/FLN)

              Plaintiff,
v.                                            **ORDER AND**
                                                       **REPORT & RECOMMENDATION**

City of Minneapolis, et al.,

              Defendants.
_____

No appearance for Plaintiff.
Burt Osborne for Defendants.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on October 16, 2017, on Plaintiff Margot Kapacs' motions for a temporary restraining order (ECF No. 6), preliminary injunction (ECF No. 30), and for legal representation (ECF No. 41). This matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. *See* Order, ECF No. 16. For the reasons set forth below, the undersigned recommends that Plaintiff's motions for a temporary restraining order and preliminary injunction be **DENIED**, and the undersigned orders that Plaintiff's motion for legal representation is **DENIED**.

### I. FACTUAL BACKGROUND

Plaintiff is the owner and operator of Minnehaha Lofts, LLC. *See* ECF No. 32 at 2. Minnehaha Lofts provides short-term, extended stay accommodations as a hotel alternative. *See* ECF No. 7, Ex. 4 at 1. In June 2015, Defendant City of Minneapolis (the "City") revoked Plaintiff's rental license for a duplex property he owns, located at 3324 23rd Avenue South, Minneapolis, Minnesota, after Plaintiff allegedly failed to respond to the City's numerous attempts to inspect the property. *See* ECF No. 1 ¶ 10. In late 2015 and early 2016, the City denied Plaintiff's applications

for rental licenses at other Minneapolis properties because a City rental ordinance, § 244.1910(13)(b), prohibits new rental license applications from being granted if an applicant had a license revoked within the preceding year. *See generally* ECF No. 1. On October 20, 2015, the Minnesota Court of Appeals concluded that Plaintiff failed to timely appeal the City's rental license revocation, and the revocation stood as final. *See* ECF No. 54 at 50.

Plaintiff then filed suit in the Hennepin County, Minnesota, District Court, challenging, *inter alia*, the constitutionality of a City rental ordinance, § 244.1840(3). On November 30, 2015, the Hennepin County District Court dismissed all, but one of Plaintiff's claims. *See id.* at 28. On August 31, 2016, the Hennepin County District Court dismissed Plaintiff's remaining claim. *See id.* at 32.

Plaintiff then filed several appeals before the Minnesota Court of Appeals, contesting the City's rental license revocation, the City's denial of his rental application for a property, located at 5420 44th Avenue South, Minneapolis, Minnesota, and the Hennepin County District Court's dismissal of his claims. *See id.* at 34; *see generally* ECF No. 40, Exs. 2, 3. However, the Minnesota Court of Appeals affirmed the City's rental license revocation, application denial, and the Hennepin County District Court's dismissal of his claims. *See generally* ECF No. 40, Exs. 2, 3. In addition to state court litigation, Plaintiff has filed multiple suits, either active or dismissed, in the District of Minnesota, seeking federal review of Plaintiff's myriad state court claims stemming from the City's rental license revocation and application denial, *see e.g.*, *Kapacs v. City of Minneapolis Regulatory Service, et al.*, 16-cv-2540 (PJS/BRT), and his divorce. *See e.g.*, *Kapacs v. State of Minnesota, et al.*, 17-cv-3615 (WMW/HB).

On June 27, 2017, Plaintiff commenced this action, raising claims under 42 U.S.C. § 1983, 42 U.S.C. § 1961, 18 U.S.C. § 1621, and 18 U.S.C. § 1623, alleging violations of his Fourth, Fifth, and Fourteenth Amendments rights. *See generally* ECF No. 1. In the instant motions for a temporary

restraining order and preliminary injunction, Plaintiff "requests to stay the enforcement of the [C]ity's decision revoking the rental license [for the 3324 23rd Avenue South, Minneapolis, Minnesota, property] . . . until the merits of this lawsuit may be decided." ECF No. 31 at 1. Defendants oppose the request, arguing that the particular injunctive relief Plaintiff seeks is barred "under the *Rooker-Feldman* doctrine and . . . by *res judicata*" and "Plaintiff cannot establish irreparable harm or show a likelihood of success on the merits." ECF No. 36 at 3.[1]

Plaintiff also requests appointment of counsel because, primarily, he is financially exhausted and English is his second language. *See generally* ECF No. 42. Plaintiff also argues that courts are increasingly appointing counsel in cases, such as here, in which there is a potential property interest deprivation. *See id.* at 8. Defendants oppose Plaintiff's request for appointment of counsel, arguing that Plaintiff is a serial litigant that the Court should avoid allocating resources for in this "frivolous" suit. ECF No. 52 at 2.

## II. MOTIONS FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION  (ECF Nos. 6, 30)

The Court may grant a temporary restraining order or preliminary injunction only upon the movant's proper showing: (1) that it will suffer irreparable harm absent the injunction; (2) of a probability of success on the merits; (3) that the balance of harm favors the injunctive relief sought; and (4) that the public interest favors granting injunctive relief. *See Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113–14 (8th Cir.1981) (en banc); *see e.g.*, *Northwest Airlines, Inc. v. Filipas*, Civil No. 07-4803 (JNE/JJG), 2008 WL 251872 at *1, n.1 (D. Minn. Jan. 30, 2008)

---

[1] On September 29, 2017, the Court observed that Plaintiff seeks identical relief in his motion for a temporary restraining order as in his motion for a preliminary injunction and, as a result, combined these motions. To that end, the Court construed Defendants' response to Plaintiff's motion for a preliminary injunction as a response to Plaintiff's motion for a temporary restraining order as well.

3

(reasoning that the *Dataphase* factors ordinarily apply to both requests for a temporary restraining order and a preliminary injunction); *see also Aune v. Ludeman*, Civil No. 09-15 (JNE/SRN), 2009 WL 1586739, at *2 (D. Minn. June 3, 2009). The movant carries the burden of proof for each *Dataphase* factor. *See Gelco v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir.1987)."It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The Court concludes that the balance of factors here do not favor Plaintiff's request for injunctive relief.

**A.     Irreparable Harm**

"[A] party moving for a preliminary injunction [or a temporary restraining order] is required to show the threat of irreparable harm," *Baker Elec. Coop. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994) (internal citations omitted), and the "lack of irreparable harm is sufficient ground for denying or vacating a preliminary injunction or temporary restraining order." *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir.1992) (internal citation omitted); *see e.g.*, *T. J. Mgmt. of Minneapolis v. City of Minneapolis*, Civil No. 08-512 (JRT/FLN), 2008 WL 1766579, at *6 (D. Minn. Apr. 14, 2008) (finding that the absence of irreparable harm is a sufficient basis for denying a request for a preliminary injunction). "[T]he basis for injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). "Injunctive relief will not be granted against something merely feared as liable to occur at some indefinite time; the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." *Id.* (internal citations omitted). " [E]conomic loss does not, in and of itself, constitute irreparable harm . . . Recoverable monetary loss may constitute irreparable harm

4

only where the loss threatens the very existence of [a parties'] business." *Id.* (internal citations omitted). "Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will in fact occur. The [petitioner] must provide proof . . . that the harm is certain to occur in the near future." *Id.*

At the hearing, Defendants noted that Plaintiff is still renting, and earning revenue, from the 3324 23rd Avenue South, Minneapolis, Minnesota property. Indeed, Plaintiff does not represent that the imposition of the City's rental license revocation has forced him to cease renting the subject property. Rather, Plaintiff asserts that if the City, at some future point, prevents him from renting the subject property, he will be unable to meet his financial obligations for the subject property. *See* ECF No. 31 at 4–5. However, aside from a general concern over future rental revenue loss, Plaintiff has failed to substantiate how that future loss is imminent or when the loss of rental income is certain to occur. In fact, far from certainty, although the City revoked Plaintiff's rental license in June 2015, he has yet to cease renting the subject property. Presently, the City's rental license revocation is not proximately related to actual economic loss. *See Packard Elevator v. I.C.C.*, 782 F.2d at 115.

Plaintiff also asserts that the City's rental license revocation will result in "negative reviews about [his] business in the virtual space with little means to repair in the future." ECF No. 7-1 at 11. However, Plaintiff has not shown, nor argued, that his business, the Minnehaha Lofts, has actually suffered negative reviews attributable to the City's rental license revocation and that those ostensibly negative reviews have adversely affected his business. Plaintiff also argues that he could be sued for contract breach by future tenants if the City prevents him from renting the subject property and he is forced to cancel future reservations. Again, however, at this point, without reference to, or identification of, an actual tenant who has threatened litigation if their reservation is canceled,

5

Plaintiff's fear of litigation arising from a contract breach is simply a bare, unsupported allegation of no value to the Court's analysis. *See Packard Elevator v. I.C.C.*, 782 F.2d at 115.

Futhermore, the property subject to Plaintiff's request for injunctive relief, 3324 23rd Avenue South, Minneapolis, Minnesota, is not Plaintiff's sole rental property. If the City, at some point in the future, compelled Plaintiff to cease renting the subject property, Plaintiff owns several rental properties from which he can derive rental revenue. Plaintiff has not shown why his other sources of rental revenue could not be used to offset his losses at the subject property. True, the potential loss of rental revenue at the subject property will, to some extent, damage Plaintiff's profits, but Plaintiff has not shown that the impact of the loss of this single property"threatens the very existence of . . . [his] business." *T. J. Mgmt. of Minneapolis*, 2008 WL 1766579, at *6 (internal citations omitted). At this stage, Plaintiff's putative loss of rental revenue from a single property is far too speculative and indefinite to warrant the extraordinary preliminary injunctive relief that he seeks. *See Packard Elevator*, 782 F.2d at 115.

As a final consideration, if the City required Plaintiff, at some point in the future, to cease renting the subject property and Plaintiff were to prevail in this case, he would be free to request that the lost rental revenue be added to the damages he is requesting. Plaintiff has not shown how damages, a form of relief he requests in his Complaint, provide him with "no adequate remedy at law" for the potential loss of rental revenue. *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 300 (8th Cir. 1996). As such, Plaintiff has not shown irreparable harm. *Cf. Sampson v. Murray*, 415 U.S. 61, 90 (1974) (holding that "[t]he possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.").

6

**B.     Likelihood of Success on the Merits**

> [A]t the early stage of a preliminary injunction motion, the speculative nature of this particular [likelihood of success] inquiry militates against any wooden or mathematical application of the test. Instead, a court should flexibly weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir.1998) (internal citations and quotation marks omitted). "In isolation, of course, '[t]he likelihood that plaintiff ultimately will prevail is meaningless.'" *Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 371 (8th Cir.1991) (quoting *Dataphase*, 640 F.2d at 113)."The threshold inquiry is whether the movant has shown the threat of irreparable injury." *Gelco*, 811 F.2d at 418 . Thus, the Eighth Circuit has held "that the movant's failure to sustain its burden of proving irreparable harm ends the inquiry and the denial of the injunctive request is warranted." *Glenwood Bridge, Inc.*, 940 F.2d at 371; *Accord Dataphase*, 640 F.2d at 114 n.9.

Here, the Court has concluded that Plaintiff will not suffer irreparable harm. *See Supra* at 4–7. Accordingly, whether Plaintiff is likely to prevail on the merits of this case is not central to the Court's analysis. *See id.* However, the Court observes that Plaintiff has extensively litigated the City's rental license revocation in multiple forums, but he has yet to prevail in those challenges, and "none of [Plaintiff's] theories [here in support of his case] are sufficiently strong to outweigh [his] failure to demonstrate irreparable harm." *T. J. Mgmt. of Minneapolis*, 2008 WL 1766579, at *6. At best, Plaintiff's theory of the case needs development. As it presently stands, Plaintiff has failed to show that he is likely to prevail in this case and that the injunctive relief he seeks is warranted. *See Dataphase*, 640 F.2d at 114.

**C.     Remaining Factors**

Neither the balance of harms nor the public interest, favor an injunction. The effect and harm of the City's rental license revocation is at this point minimal given that Plaintiff continues to earn income from the subject property. In addition, the public has a strong interest in the City's enforcement of the municipal rental code. In the abstract, the public has a correspondingly strong interest in ensuring that the rental code is properly and fairly enforced, a factor Plaintiff rightfully articulates; but, in this case, at this preliminary stage, and in light of the previous court findings that Plaintiff was provided proper process throughout the City's rental license revocation, the public's process interest is not so great as to warrant the injunctive relief Plaintiff seeks. *See Dataphase*, 640 F.2d at 114.

**D.       Other Arguments**

Additionally, Defendants argue that Plaintiff's request for injunctive relief is barred under the *Rooker-Feldman* and *res judicata* doctrines. However, because Plaintiff cannot satisfy the *Dataphase* preliminary injunction standard, the Court need not consider these arguments.

### III. MOTION FOR APPOINTMENT OF COUNSEL  (ECF No. 41)

The decision to appoint counsel in civil cases is committed to the discretion of the district court. *See Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir.1984). *Pro se* litigants, such as Plaintiff, do not have a constitutional or statutory right to counsel in civil cases. *See Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). "When determining whether to appoint counsel for an indigent civil litigant [such as Plaintiff], the . . . court considers relevant factors such as the complexity of the case, the ability of the indigent litigant to investigate the facts, the existence of conflicting testimony, and the ability of the indigent to present his claim." *Id*. (citing *Johnson v.*

*Williams*, 788 F.2d 1319, 1322–23 (8th Cir. 1986)).[2] The Court finds that neither the facts nor the legal issues involved in this case are likely to be so complex as to warrant appointment of counsel. Plaintiff has extensively self-litigated the City's rental license revocation and denial of his rental applications in multiple forums, and has demonstrated a capacity to bring claims, navigate the Rules governing motion practice in the District of Minnesota, identify the statutes and supporting cases under which he is bringing his claims, and articulate the forms of relief he believes he is entitled to. *See id.*

Nor should Plaintiff experience insuperable difficulty investigating the relevant facts of this case. Indeed, Plaintiff has been a party to this dispute with the City for nearly four years and his motions regularly cite facts that he believes support his claims. Moreover, Plaintiff's motions are replete with examples, he believes, demonstrate the City's inconsistent and improper rental code enforcement. *See id.* Finally, up to this point, Plaintiff has demonstrated a threshold ability to present his claims. Although Plaintiff appears not to be a native English speaker, his pleadings are competently drafted and understandable. *See id.*

As an aside, this Court notes that appointment of counsel is something of a misnomer in the context of most civil litigation. The power to appoint counsel implies the authority to coerce an attorney into representing a litigant under the specter of sanctions. *See Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 305–08 (1989). Several federal statutes provide federal courts with this coercive authority over certain subject matters. For example, 18 U.S.C. § 3006A(b) provides for appointment of counsel for an indigent criminal defendant. *See also* Fed. R. Crim. P. 44(a); *Mallard*, 490 U.S. at 306–07 (collecting statutes). By contrast, no statute permits

---

[2] The Court granted Plaintiff's request to proceed *in forma pauperis*. *See* Order, ECF No. 14.

the Court here to appoint counsel — that is, to require an attorney to represent Plaintiff under the coercive threat of sanctions.

28 U.S.C. § 1915(e)(1), provides that "[t]he court may *request* an attorney to represent any person unable to afford counsel." (emphasis added). However, unlike coercive federal statues, the use of "request" in § 1915(e)(1) is "understood to signify that [§ 1915(e) does] not authorize compulsory appointments." *Mallard*, 490 U.S. at 307. "*In forma pauperis* plaintiffs," such as Plaintiff here, "typically ask judges to appoint counsel, and judges regularly construe motions seeking appointment of counsel . . . as motions seeking the court's assistance under § 1915(e)(1) in recruiting a volunteer." *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) (en banc) (internal citations omitted). Despite the permissive use of the word appointment, the Court's authority under § 1915(e)(1) extends only to the power to make requests of the bar. Certainly, such requests bear the imprimatur of the Court itself and therefore "confront a lawyer with an important ethical decision" in determining whether to represent an indigent litigant. *Mallard*, 490 U.S. at 308. But they remain *requests* just the same.

Here, the Court has already made such a request in this case without prompting from Plaintiff. The Federal Bar Association ("FBA") maintains a panel of volunteer lawyers who often assist *pro se* litigants, and the Court frequently refers litigants to the FBA for possible representation. In essence, such referrals are requests pursuant to § 1915(e)(1). Through these referrals, the Court formally asks that a volunteer lawyers consider whether to represent the litigant brought before them. Plaintiff was referred to the FBA in July 2017, *see* Letter, ECF No. 13, but to this point, no attorney has been willing to represent him. As a practical matter, there is little more this Court is permitted to do to assist Plaintiff retain counsel. *See Mallard*, 490 U.S. at 307.

## IV. RECOMMENDATION

Based upon all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff's motions for a temporary restraining order (ECF No. 6) and preliminary injunction (ECF No. 30) be **DENIED**.

## V. ORDER

Based upon the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's motion for appointment of legal representation (ECF No. 41) is **DENIED**.

DATED: November 1, 2017                                *s/Franklin L. Noel*
                                                       FRANKLIN L. NOEL
                                                       United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before November 16, 2017, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by November 16, 2017, a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.